**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**DANIELLE SCHULTZ, f/k/a
DANIELLE BOWMAN MONTEITH,**

      **Plaintiff,**

**vs.**                        **Case No.  1:12-CV-148-MP/CAS**

**CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

      This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (SSA) denying Plaintiff's application for Supplemental Security Income (SSI).  After careful consideration of the entire Record, it is recommended that the decision of the Commissioner be reversed and remanded for further proceedings.

### I.  Procedural Status of the Case

      On May 16, 2006, Plaintiff, Danielle Schultz, f/k/a Danielle Bowman Monteith, filed an application for SSI alleging disability beginning January 15, 2003, because of

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this case.

anxiety, depression, and panic attacks. R. 16, 108, 110, 202-04, 235, 240. (Citations to the Record shall be by the symbol "R." followed by a page number that appears in the lower right corner.)

Plaintiff's application was denied initially on August 17, 2006, and upon reconsideration on February 1, 2007. R. 108, 123-25, 129-32. On February 20, 2007, Plaintiff requested a hearing. R. 108, 132.

On March 24, 2008, Plaintiff testified at a hearing in Gainesville, Florida, conducted by an Administrative Law Judge (ALJ) Douglas A. Walker. R. 69-100, 108, 117. Plaintiff, R. 72-85, and V. David Pigue, an impartial vocational expert, testified during the hearing. R. 86-93, 151-56 (Resume). John Schultz, Plaintiff's betrothed at the time, also testified. R. 95-98. Plaintiff was represented by Carla D. Franklin, an attorney. R. 108, 126-27.

On June 25, 2008, the ALJ issued a decision denying Plaintiff's application for benefits. R. 108-17. Plaintiff requested review. R. 157, 311. On December 11, 2009, the Appeals Council vacated the ALJ decision and remanded the case back to the ALJ with instructions to resolve several issues. R. 119-22. In part, the Appeals Council directed the ALJ to further evaluate the opinion evidence from Gary L. Kanter, M.D., and Susan Armstrong, Ph.D. R. 120-22. Some of the considerations on remand included:

- The hearing decision does not contain an adequate evaluation of the treating source opinions in Exhibits 10F and 5F. The [ALJ's] rationale for discounting the November 20, 2006, and March 17, 2008, opinions of S. Armstrong, Ph.D., and G. Kanter, M.D., respectively, indicating that the claimant is disabled mentally, is well taken. However, there is no opinion in the record from a treating or examining source supporting the [ALJ's] conclusion in this regard, and the Council concludes that further consideration is needed.

. . . .

- Obtain additional evidence concerning the claimant's mental impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 416.912-913). The additional evidence may include, if warranted and available, a consultative mental status examination with psychological testing and medical source statements about what the claimant can still do despite the impairments.

R. 120-21.

The ALJ stated the scope of the remand as follows: "Give further consideration to the claimant's maximum residual functional capacity [RFC] during the entire period at issue and provide [a] rationale with specific references to evidence of record in support of assessed limitation (Social Security Ruling 96-8p)" and "take any further action needed to complete the administrative record and issue a new decision." R. 16.

On June 28, 2010, the ALJ conducted a second hearing in Ocala, Florida. R. 16, 36-68. Plaintiff, R. 39-54, and her mother also testified. R. 55-58. Dr. Howard S. Feldman, a vocational expert, testified by telephone. R. 16, 59-68. Ms. Franklin represented Plaintiff. R. 16, 38. On July 14, 2010, the ALJ entered a decision. R. 16-30. Plaintiff requested the Appeals Council review the ALJ's decision. R. 6-10. On May 4, 2012, the Appeals Council considered the reasons the Plaintiff disagreed with the ALJ's decision, but found no basis to disturb the decision. R. 1-4. The ALJ's July 14, 2010, decision became the Commissioner's final decision for purposes of judicial review.

On July 5, 2012, Plaintiff filed a complaint seeking review of the Commissioner's decision. Doc. 1. The parties filed memoranda of law, docs. 12 and 13, which have been considered.

## II.  Findings of the ALJ

In the second written decision, the ALJ made several finding relative to the

issues raised in this appeal:

1. Plaintiff was born on August 23, 1976, was 29 years of age, defined as a younger individual age 18-49, on the date the application was filed.  Plaintiff has at least a high school education and is able to communicate in English. R. 28.

2. Plaintiff has not engaged in substantial gainful activity since May 16, 2006, the application date.  R. 18.

3. Plaintiff has several "severe impairments: (1) Generalized anxiety disorder (2) Bipolar disorder, and (3) Attention deficit disorder."  R. 18.

4. Plaintiff does "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  R. 18.

5. Plaintiff has the RFC "to perform light work as defined in 20 CFR 416.967(b) except that the claimant would require work which is low stress (non-production oriented), simple, unskilled, with one, two, or three step instructions, not in close proximity to coworkers (meaning that the individual could not function as a member of a team), and not in direct contact with the public, and who has psychologically based symptoms which affect her ability to concentrate upon complex to detailed tasks, but she would remain capable of understanding, remembering and carrying out simple job instructions." R. 20.

6. Plaintiff "has no past relevant work."  R. 28.

7. "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform" such telephone survey worker, assembler of small products #'s 1 and 2, and mail clerk, each light, unskilled, and with a SVP of 2.  R. 28-29.

## III.  Issue to be Determined

In light of the remand order, the issue is whether the record before the ALJ is

adequate to support his rejection of the opinions of Plaintiff's treating psychiatrist,

Dr. Kanter, and her treating psychologist, Dr. Armstrong.

## IV. Legal Standards Guiding Judicial Review

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); 42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)(citations omitted).[2]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'"  Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age,

---

[2] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 416.920(a)(4)(i)-(v):

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairments?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. However, if the claimant carries this burden, the burden

shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 416.920(a)(4)(v), (e), & (g).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 416.927(d)(2).

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated.  Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at 1053.

The ALJ may discount a treating physician's opinion report regarding an inability to work if it is unsupported by objective medical evidence and is wholly conclusory.

Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991). Stated somewhat differently, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583 (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).

## V. Legal Analysis

### A. Introduction

The ALJ wrote two decisions in this matter. R. 16-30, 108-17. In his second decision after remand, the ALJ provides a detailed discussion of the record evidence. R. 20-28. Plaintiff argues that the ALJ erred when he rejected the opinions of Drs. Kanter and Armstrong in light of the remand order from the Appeals Council. Doc. 11 at 13-22. The evidence set forth below pertains mainly to the evaluation and treatment afforded Plaintiff by Drs. Kanter and Armstrong. The ALJ's recitation of the medical and other evidence of record is incorporated herein except as otherwise noted.

The Court agrees with Plaintiff's argument that the ALJ did not follow the directions on remand. Accordingly, after reviewing the entire record, it is respectfully recommended that this case be reversed and remanded to the Commissioner for further proceedings.

**B.  The ALJ's determination to reject the opinions of Drs. Kanter and Armstrong is not supported by substantial evidence in light of the inadequate record.**

**Relevant Medical and Other Evidence**

In her filings with the Social Security Administration, and in particular, in a March 26, 2007, disability report, Plaintiff stated that she began treatment with Drs. Kanter and Armstrong, on September 6, 2006, and in August 2006, respectively.  R. 284; *see* R. 271.  As of the March 2007 filing, Plaintiff's last visits with both doctors were in February 2007, with the next appointments in March 2007.  R. 284.

In an April 3, 2008, miscellaneous report entitled "Claimant's Recent Medical Treatment," Plaintiff stated that she had been treated by Dr. Kanter from October 1, 2006, and ongoing.  R. 299.  Plaintiff stated she was prescribed medication on October 1, 2006, (Klonopin and Seroquel) and February 27, 2007, (Ambien).  R. 299-300.  She was also prescribed Melatonin for sleep.  R. 300.  In a June 21, 2010, "Claimant's Recent Medical Treatment" form (requesting an update from March 26, 2007, forward), Plaintiff stated that she had been treated by Dr. Kanter from "September 2006 to present."  R. 333.  Prescribed medications from Dr. Kanter are also listed from September 22, 2006 (Alprazolam); February 27, 2007 (Zolpidem); August 6, 2008 (Trazodone); April 1, 2009 (Vyvanse); and November 16, 2009 (Paliperidone).  Other medications are noted.  R. 334.

A January 12, 2007, billing statement from Dr. Kanter noted that Plaintiff had her initial diagnostic interview/examination with Dr. Kanter on September 19, 2006, with follow-up visits on October 4 and 27, 2006; November 27, 2006; and December 18,

2006.  R. 390.  A prescription record from Dr. Kanter indicates several medications were

prescribed for Plaintiff between September 22, 2006, and December 18, 2006.

R. 391.

On March 17, 2008, Dr. Kanter completed a "Mental Impairment

Questionnaire" wherein he checked boxes to indicate that Plaintiff had serious to no

ability to perform most work activities.  R. 418-23.  Dr. Kanter stated that he had

"monthly" contact with Plaintiff, although specific dates of treatment are absent.  R. 418.

Three medications are noted: Seroquel, Ambien, and Klonopin.  R. 418.  Dr. Kanter did

not provide progress notes or any substantive explanation to support his opinion.

R. 418-23.  The last treatment note of record by Dr. Kanter was dated December 2006--

approximately 15 months before the March 17th questionnaire.  R. 390.  (The ALJ

refers to Dr. Kanter's March 2008, opinion twice in his decision.  R. 24, 26.)

At the request of Plaintiff's counsel, Dr. Kanter submitted a new letter on

June 17, 2010.  R. 448-49.  He noted that "[s]ince March 2008[, Plaintiff's] condition

deteriorated with a significant increase of incapacitating anxiety, bulimia, and suicidal

ideation.  She has required weekly therapy and multiple changes to her

psychopharmacologic regimen."  R. 448.  Dr. Kanter described the difficulties Plaintiff

had with the medications.  R. 448-49.  Dr. Kanter described changes in Plaintiff's mental

condition in numerous areas of functioning.  R. 448.  He concluded: "At this time,

contrary to her previous functioning, the patient is unable to sustain ANY gainful

employment even with "proper support"."  R. 449.  Dr. Kanter was aware that Plaintiff

had been Baker Acted in January 2010.  R. 448.  Dr. Kanter did not expressly state,

however, when he last examined Plaintiff, provide any contemporaneous treatment

notes, or detail what specific activities Plaintiff could and could not perform given her worsening mental condition.  R. 448-49.  (The ALJ refers to Dr. Kanter's June 17, 2010, letter in his decision.  R. 26.)

During the second hearing held on June 28, 2010, Plaintiff testified that she was able to go to CVS near her house and sometimes goes to the grocery store, but she has "to be on medication, though, in order for [her] to do that.  [She] can't do it without medication."  R. 51.  The ALJ then inquired: "Have you--have you been in treatment consistently the last two years?"  Plaintiff responded "Yes" and that the treatment was with "Dr. Cantor" [sic] and consisted of medication and that he attempted different medications.  R. 52.  Plaintiff described her worsening condition over the last two years.  R. 52-53.  Plaintiff did not mention any other doctors or therapists by name.

In his decision, the ALJ described this portion of the testimony: "She is able to go to CVS.  She can go to the grocery store, but she has to have medication to do so.  *Dr. Gengrich* is treating her.  She takes her medication."  R. 21 (emphasis added).  The ALJ also stated later in his decision: "At the time of the hearing on June [2]8, 2010, the claimant stated that *Dr. Gengrich* was treating her.  She made no mention of Dr. Kantor [sic]."  R. 26 (emphasis added).  The ALJ made a mistake when he found Plaintiff did not mention Dr. Kanter at the hearing and the Commissioner agrees, but suggests that it is harmless.  Doc. 13 at 14 n.7.  The ALJ also made a mistake when he found that Plaintiff said Dr. Gengrich was treating her.  She did not.  R. 52.  For the reasons discussed herein, the ALJ's findings are not harmless.

The ALJ correctly noted, however, that the only treatment records in evidence are from September 19, 2006, to December 18, 2006, three and half years prior to

Dr. Kanter's June 17, 2010, letter.  R. 26-27, 390 (one-page billing statement).  (The

March 17, 2008, Mental Impairment Questionnaire is an intervening record from

Dr. Kanter.)

As for Dr. Armstrong, in a November 20, 2006, "To Whom It May Concern" letter,

Dr. Armstrong wrote that Plaintiff had been her patient since June 2006.  R. 387.

Dr. Armstrong notes that Plaintiff "began treatment after her most recent in-patient stay"

when she was "admitted to the Meridian Behavioral Health Crisis Stabilization Unit.  The

diagnoses made by staff . . . were, Panic disorder and Depression.  At that time, June

2006, [Plaintiff] was given Seroquel, Lamictal, Geodon and Neurontin."  R. 387; *see*

R. 24.  The ALJ provided a detailed discussion of Dr. Armstrong's diagnoses that

included: Bipolar II Disorder, Recurrent Major Depressive Episodes with Hypomanic

Episodes; Generalized Anxiety Disorder; Attention Deficit Disorder, Combined Type

Inattentive/Impulsive Type; Social Problems, Occupational Problems, Relationship

Problems.  Plaintiff's current Global Assessment of Functioning (GAF) score was 40.

R. 387; *see* R. 25.  Dr. Armstrong lists 34 symptoms based on Plaintiff's experience.  R.

387; *see* R. 25.  After describing Plaintiff status, R. 387-89, Dr. Armstrong states:

> [Plaintiff] has several chronic mental health disorders and will require at least 18
> more months of weekly therapy sessions.  She's motivated to do this work and
> her prognosis for achieving a functional adult status is positive if she is given the
> opportunity to do her psychological work without the burden of additional financial
> stress and the necessity of imbedding herself back into her dysfunctional family
> of original matrix.
>
> [Plaintiff] is clearly not able to work at this time.  She cannot be depended upon
> to focus on any task with clarity and predictability.  She cannot be depended
> upon to adhere to any consistent schedule.  As yet, she has not developed
> successful coping skills to manage her intense anxiety which makes are highly
> distractible.

R. 389.[3]  There are no other treatment notes from Dr. Armstrong in the record.

The ALJ gave the opinions of Drs. Kanter and Armstrong "limited weight."  R. 25-26.  In affording this limited weight to Dr. Kanter's March 17, 2008, opinion, the ALJ noted that "[t]he only treatment records regarding Dr. Kanter are found at Exhibit 6F, from September 19, 2006, to December 18, 2006, a year and three months prior to this opinion."  R. 26; *see* R. 390. This is an accurate statement.  The ALJ next considered Dr. Kanter's June 17, 2010, opinion/letter, and stated in part: "At the time of the hearing on June [2]8, 2010, the claimant stated that *Dr. Gengrich* was treating her.  She made no mention of Dr. Kantor [sic].  The only treatment records in evidence regarding Dr. Kantor [sic] are found at Exhibit 6F from September 19, 2006 to December 18, 2006, three and a half years prior to this letter."  R. 26-27; *see* R. 390 (emphasis added).  This statement is accurate as to the limited nature of treatment records in the record, but as noted above, is not accurate as to what Plaintiff said during the hearing.  During the second hearing, Plaintiff testified in response to the ALJ's question that she had been in treatment consistently the last two years with Dr. Cantor [sic].  R. 52.  Plaintiff did not mention Dr. Gengrich.  R. 52.  In a June 21, 2010, form, Plaintiff lists Dr. Kanter (September 2006 to present) and Lissa Friedman, Ph.D. (May 5, 12, 19, 2009), not Dr. Gengrich.  R. 333.  (Dr. Friedman saw Plaintiff four times for counseling sessions: April 30, 2010; May 5, 2010; May 12, 2010; and May 19, 2010.  R. 450-51.)

---

[3]  The ALJ noted that on January 26, 2007, State Agency Consultant, Alan Harris, Ph.D., reviewed the medical evidence of record, including Dr. Armstrong's opinion, and Dr. Harris opined "that the claimant had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties on maintaining concentration, persistence or pace and no episodes of decompensation. R. 25, 27, 402, 404, 406-07.  (Dr. Harris summarized the findings of the claimant's treating physician, Susan Armstrong, Ph.D."  R. 27.)  The ALJ summarized Dr. Harris' opinion and the ALJ assigned "significant weight to Dr. Harris' opinion, as it is consistent with the objective medical evidence of record."  R. 28.

There is more than a fair inference in the record that Dr. Kanter treated Plaintiff on a monthly basis for several years prior to his June 17, 2010, letter and that their association dates back to September 2006.  In fact, in his June 17, 2010, letter, Dr. Kanter noted in part that since March 2008, Plaintiff's condition deteriorated and "has required weekly therapy and multiple changes in her psychopharmacologic regimen."  R. 448.  In his March 17, 2008, questionnaire, Dr. Kanter noted that he had "monthly" contact with Plaintiff.  R. 418.

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim.  *See* 20 C.F.R. § 416.912(a); Moore v. Barnhart, 405 F.3d at 1211.  On the other hand, an ALJ has a clear duty to fully and fairly develop the administrative record.  Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995); 20 C.F.R. § 416.912(d).  *See* Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) ("One of our recent opinions confirms, moreover, that an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.") (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte.")); 20 C.F.R. § 416.920b (eff. Mar. 26, 2012).  Further, under Social Security Ruling 96-5p, the ALJ must make "every reasonable effort" to re-contact a medical source when the medical evidence does not support the source's opinion, and the ALJ cannot ascertain the basis for that opinion from the case record.  Vesy v. Astrue, 353 F. App'x 219, 225 (11th Cir. 2009).  The question here is whether there are "the kinds of gaps in the evidence necessary to demonstrate prejudice" to Plaintiff.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir.

1997).  The issue is particularly acute in this case given the directions in the remand

ordered by the Appeals Council.  R. 120-22.

Plaintiff was represented by counsel, who for reasons unknown, did not provide

the ALJ or the Commissioner on remand with any additional examination and treatment

notes from Dr. Kanter even though the record indicates that Plaintiff saw Dr. Kanter

more frequently that only in 2006.  It is uncertain whether Plaintiff followed-up with

Dr. Armstrong for treatment after 2006.  R. 387.[4]

Nevertheless, remand for further development of the record is appropriate when

there are evidentiary gaps that result in prejudice.  <u>Brown</u>, 44 F.3d at 935.  The ALJ's

failure to contact Dr. Kanter and determine whether any patient notes exist (over an

almost four-year period) caused a gap in the record resulting in prejudice to Plaintiff,

especially in light of the remand order.  R. 120-22.  Also, it appears that the ALJ based

at least part of his judgment in assigning "limited weight to Dr. Kanter's opinion," R. 26,

on his finding that Plaintiff was being treated by Dr. Gengrich rather than Dr. Kanter,

which does not appear to be accurate.  R. 21, 26.[5]

---

[4]  On June 21, 2010, Plaintiff's counsel filed a "Response to Prehearing
Questionnaire."  R. 339-40.  No mention is made of any treatment notes from
Dr. Kanter other than what appear in the ALJ's decision and the record.  *Id.*
Dr. Armstrong is not mentioned.  *Id.*; *see* R. 8-10 (Counsel's Sept. 16, 2010, submission
to the Appeals Council).

[5]  20 C.F.R. § 416.927 provides guidance when opinion evidence is evaluated.
More weight is given to opinions from the claimant's treating sources "since these
sources are likely to be the medical professionals most able to provide a detailed,
longitudinal picture of [the claimant's] impairments(s) and may bring a unique
perspective to the medical evidence that cannot be obtained from the objective medical
findings alone or from reports of individual examinations."  20 C.F.R. § 416.927(c)(2).  It
is uncertain whether additional treatment records exist from Dr. Kanter.  So far, as noted
by the ALJ, the only treatment records, such as they are, regarding Dr. Kanter are "from
September 19, 2006, to December 18, 2006," and the ALJ is correct.  R. 21.  But if there
are additional treatment records, they may shed light on Dr. Kanter's March 2008 and

The record appears incomplete and, therefore, remand is appropriate.  *See* 42 U.S.C. § 405(g); <u>Jackson v. Chater</u>, 99 F.3d 1086, 1092 (11th Cir. 1996) (explaining that a "remand to develop a full and fair record in accordance with law is a sentence-four remand").  On remand, the Commissioner should contact Dr. Kanter and other treating medical sources, including Dr. Armstrong and Dr. Gengrich, and request any and all patient treatment records and further request whether they have any additional opinions or whether clarification is necessary.  The Commissioner should gather any additional evidence, if necessary, to determine whether Plaintiff was disabled during the relevant period.  This directive should not be read as favoring a particular outcome on remand.

_____

June 2010 opinions and provide a "longitudinal picture" of Plaintiff's mental health during the relevant period.

Case No. 1:12cv148-MP/CAS

## VI. Conclusion

Considering the record as a whole, the ALJ did not comply with the Appeals Council's remand for the reasons stated herein. The findings of the ALJ are not based upon substantial evidence in the record and the ALJ incorrectly applied the law. Accordingly, pursuant to the fourth sentence in 42 U.S.C § 405(g), it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **REVERSED** and this case be **REMANDED** for further proceedings.

**DONE AND ORDERED** at Tallahassee, Florida, on April 8, 2013.


s/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**